UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
UN JUNG KIM,                                                               **COMPLAINT**

                                        Plaintiff,

                        -against-

NYC LUXURY KITCHEN & BATH LLC,
ATMOSPHERE KITCHEN AND BATH LLC, ACNY
DEVELOPERS, INC., AMERICAN CONSTRUCTION
OF NY, INC., and WILLIAM KUKIELKA a/k/a BILL
COOK,

                                        Defendants.
------------------------------------------------------------------X

   Plaintiff Un Jung Kim ("Plaintiff"), by her attorney, the undersigned, for her complaint against Defendants NYC Luxury Kitchen & Bath LLC, Atmosphere Kitchen and Bath LLC, ACNY Developers, Inc., American Construction of NY, Inc., and William Kukielka a/k/a Bill Cook ("Cook") (collectively "Defendants"), alleges the following:

## PRELIMINARY STATEMENT

   1. Plaintiff brings this action against Defendants for unpaid overtime wages pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA") and New York Labor Law, N.Y. Lab. Law §§ 190, *et seq.* ("NYLL"), unpaid commissions pursuant to the NYLL, failure to provide benefits pursuant to the NYLL, failure to provide a wage notice pursuant to the NYLL, failure to provide wage statements pursuant to the NYLL, unlawful deductions from wages pursuant to the NYLL, breach of contract pursuant to New York common law, promissory estoppel pursuant to New York common law, quantum meruit pursuant to New York common law, and unjust enrichment pursuant to New York common law.

1

**THE PARTIES**

2.      Plaintiff is an individual residing at 166 Truman Terrace, Paramus, NJ 07652.

3.      Upon information and belief, Defendant NYC Luxury Kitchen & Bath LLC is a New York limited liability company with its principal place of business at 618 Columbus Avenue, New York, NY 10024.

4.      Upon information and belief, Defendant Atmosphere Kitchen and Bath LLC is a New York limited liability company with its principal place of business at 618 Columbus Avenue, New York, NY 10024.

5.      Upon information and belief, Defendant ACNY Developers, Inc. is a New York corporation with its principal place of business at 618 Columbus Avenue, New York, NY 10024.

6.      Upon information and belief, Defendant American Construction of NY, Inc. is a New York corporation with its principal place of business at 618 Columbus Avenue, New York, NY 10024.

7.      Upon information and belief, Cook is an individual residing at an unknown address in New York.

**JURISDICTION AND VENUE**

8.      Pursuant to 28 U.S.C. § 1331, this Court has federal-question jurisdiction over Plaintiff's claims pursuant to the FLSA.

9.      Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over Plaintiff's claims pursuant to the NYLL and New York common law.

10.     Alternatively, pursuant to 28 U.S.C. §§ 1332(a)(1), (c)(1), this Court has diversity jurisdiction over Plaintiff's claims pursuant to the FLSA, NYLL, and New York common law

2

because the matter in controversy exceeds the sum of $75,000.00 exclusive of interest and costs, Plaintiff is a citizen of New Jersey, and Defendants are citizens of New York.

11.     Pursuant to 28 U.S.C. §§ 1391(b)(1), 1391(b)(2), 1391(c)(1), and 1391(c)(2), the Southern District of New York is the proper venue.

## FACTUAL ALLEGATIONS

12.     Defendants NYC Luxury Kitchen & Bath LLC, Atmosphere Kitchen and Bath LLC, ACNY Developers, Inc., and American Construction of NY, Inc., collectively, are companies that design, build, and sell fixtures for, residential and commercial construction projects in New York City.

13.     Plaintiff was employed by Defendants as a designer/salesperson from around June 10, 2015 to around November 22, 2017.

14.     As a designer/salesperson, Plaintiff's job duties were to design kitchens and baths for Defendants' customers and sell kitchen and bath fixtures to Defendants' customers.

15.     Although Plaintiff was not hired as a project manager, she was also required to assume the job duties of a project manager, and Defendants gave her business cards with the job title of "Designer/Project Manager."

16.     Upon information and belief, each of Defendants NYC Luxury Kitchen & Bath LLC, Atmosphere Kitchen and Bath LLC, ACNY Developers, Inc., and American Construction of NY, Inc. has at least 2 employees.

17.     Upon information and belief, each of Defendants NYC Luxury Kitchen & Bath LLC, Atmosphere Kitchen and Bath LLC, ACNY Developers, Inc., and American Construction of NY, Inc. has an annual dollar volume of sales of at least $500,000.00.

18.     Plaintiff sold fixtures that came from outside of New York, made purchase orders for products that came from outside of New York, and processed credit card payments.

19.     Defendants NYC Luxury Kitchen & Bath LLC, Atmosphere Kitchen and Bath LLC, ACNY Developers, Inc., and American Construction of NY, Inc., collectively, operate as "Atmosphere Kitchen & Bath" at 618 Columbus Avenue, New York, NY 10024.

20.     Cook is the owner and/or co-owner of each of Defendants NYC Luxury Kitchen & Bath LLC, Atmosphere Kitchen and Bath LLC, ACNY Developers, Inc., and American Construction of NY, Inc.

21.     Cook has the power to hire and fire employees of Defendants NYC Luxury Kitchen & Bath LLC, Atmosphere Kitchen and Bath LLC, ACNY Developers, Inc., and American Construction of NY, Inc.

22.     Cook supervises and controls the work schedules and conditions of employment of employees of Defendants NYC Luxury Kitchen & Bath LLC, Atmosphere Kitchen and Bath LLC, ACNY Developers, Inc., and American Construction of NY, Inc.

23.     Cook determines the rate and method of payment of employees of Defendants NYC Luxury Kitchen & Bath LLC, Atmosphere Kitchen and Bath LLC, ACNY Developers, Inc., and American Construction of NY, Inc.

24.     Cook maintains employment records for employees of Defendants NYC Luxury Kitchen & Bath LLC, Atmosphere Kitchen and Bath LLC, ACNY Developers, Inc., and American Construction of NY, Inc.

25.     Employees of Defendants NYC Luxury Kitchen & Bath LLC, Atmosphere Kitchen and Bath LLC, ACNY Developers, Inc., and American Construction of NY, Inc. are interchangeable; for example, Cook communicated with Plaintiff about her job application

4

through his e-mail address for Defendant ACNY Developers, Inc., Plaintiff was paid through Defendant NYC Luxury Kitchen & Bath LLC, Plaintiff designed kitchens and baths and sold kitchen and bath fixtures to Defendants' customers through "Atmosphere Kitchen & Bath" at 618 Columbus Avenue, New York, NY 10024, Plaintiff sold labor and construction materials through ACNY Developers, Inc. at 618 Columbus Avenue, New York, NY 10024, and Plaintiff accepted payments from Defendants' customers through NYC Luxury Kitchen & Bath LLC at 618 Columbus Avenue, New York, NY 10024.

26.     On or around May 10, 2015, Plaintiff applied for the position of Kitchen Designer by responding to a job posting on Craigslist.

27.     From around May 10, 2015 to around May 28, 2015, Plaintiff and Cook communicated in person, by phone, and by e-mail about the position, which communication included an interview and negotiation of the terms and conditions of Plaintiff's employment.

28.     On May 28, 2015, Plaintiff and Cook reached an agreement as to the terms of Plaintiff's employment, including a salary of $70,000.00 per year, 5% commission on the net profit for all sales, and health insurance for Plaintiff.

29.     Although Plaintiff and Cook never executed a formal employment contract as such, the terms of Plaintiff's employment were memorialized in an e-mail thread between Plaintiff and Cook, which is annexed hereto as Exhibit 1.

30.     As to Plaintiff's compensation, the e-mail thread stated that Plaintiff would be paid "70k per year" and "5% commission as well on all sales ( Net profit)."

31.     As to Plaintiff's health insurance, the e-mail thread stated that Plaintiff would receive "full health benefits for a single individual."

32.     Other than the e-mail thread annexed hereto as Exhibit 1, Plaintiff never received anything in writing concerning the terms of her employment.

33.      Plaintiff clocked in at the beginning of each work day and clocked out at the end of each work day using a computerized time clock.

34.     Plaintiff frequently worked more than 40 hours per week.

35.     Plaintiff was paid each Friday for the preceding Monday to Sunday.

36.     Plaintiff received a pay stub with each paycheck.

37.     Although Plaintiff was hired at a "salary" of $70,000.00 per year, she was actually paid hourly at the rate of $33.65 per hour—i.e., $70,000.00 per year divided by 52 weeks per year, divided by 40 hours per week.

38.     Each pay stub that Plaintiff received showed the number of hours that she worked during the pay period[1] under the description "Hourly."

39.     The number of hours shown on each pay stub is shown in the spreadsheet annexed hereto as Exhibit 2.

40.     Plaintiff was paid $33.65 per hour for each hour shown on each pay stub, regardless of the total number of hours that she worked in the corresponding pay period.

41.     Plaintiff was also paid a total of $16,789.63 in commissions.

42.     Plaintiff was paid the commissions sporadically, and each payment covered multiple projects.

43.     The commission payments were treated as payments to an independent contractor; they were paid through non-payroll checks without any taxes withheld or designated pay period.

---

[1] As alleged below, the number of hours shown on Plaintiff's pay stubs was sometimes less than the number of hours that she actually worked in the corresponding pay period.

44.     Defendants did not pay Plaintiff any compensation for hours that she worked besides the hourly wages and commissions described in paragraphs 37 to 43 above.

45.     Upon information and belief, Defendants knew or showed reckless disregard for the fact that that Plaintiff frequently worked more than 40 hours per week, where the number of hours that Plaintiff worked was recorded on Plaintiff's time cards and shown on Plaintiff's pay stubs.

46.     Upon information and belief, Defendants knew or showed reckless disregard for the fact that that they were required to pay Plaintiff at least one-and-one-half times her regular rate for each hour of work in excess of 40 per week pursuant to the FLSA and NYLL.

47.     Plaintiff is owed a total of approximately $4,763.78 in commissions for the following "Atmosphere Kitchen and Bath" projects, which she designed and/or sold, which were completed, and for which Defendants received payment[2]:

- $1,056.12 for the "Lindenbaum" project

- $44.60 for the "Schefrin" project

- $745.22 for the "Cantor" project

- $1,546.03 for the "Gross" project

- $329.99 for the "Hirsh" project

- $1,041.82 for the "Presser" project

48.     Plaintiff is owed a total of approximately $8,376.01in commissions for the following ACNY Developers, Inc. projects, which she designed and/or sold, which were completed, and for which Defendants received payment:

- $250.00 for the "Gibson" project

---

[2] The amounts in paragraphs 47 to 50 are estimates based on the information currently available to Plaintiff and are subject to revision based on discovery.

- $823.50 for the "Kur" project

- $1,258.63 for the "Giegerich" project

- $4,039.75 for the "Luciano" project

- $1,224.50 for the "Cantor" project

- $779.63 for the "Lindenbaum" project

49.     Plaintiff is owed a total of approximately $13,625.00 in commissions for the following "Atmosphere Kitchen and Bath" projects, which she designed and/or sold, but which were not necessarily completed, and for which Defendants had not necessarily received payment as of Plaintiff's last day of employment:

- $1,000.00 for the "Brownridge" project

- $2,000.00 for the "Berley" project

- $4,620.00 for the "Alonzo" project

- $6,005.00 for the "Sacajiu" project

50.     Plaintiff is owed a total of approximately $24,500.00 in commissions for the following ACNY Developers, Inc. projects, which she designed and/or sold, but which were not necessarily completed, and for which Defendants had not necessarily received payment as of Plaintiff's last day of employment:

- $10,750.00 for the "Alonzo" project

- $13,750.00 for the "Sacajiu" project

51.     Upon information and belief, since Plaintiff's last day of employment, Defendants have completed and/or received payment for some or all of the projects identified in paragraphs 49 and 50 above.

52.     Since her last day of employment, Plaintiff has repeatedly requested that Defendants provide a statement of earned but unpaid commissions and pay her the commissions that she is owed.

53.     In or around May 2018, in response to Plaintiff's repeated requests that Defendants provide a statement of earned but unpaid commissions and pay her the commissions that she is owed, Cook acknowledged that Plaintiff was owed commissions, said that he would send her a statement and a check, and even tried to negotiate with Plaintiff to rehire her, effectively using the withheld commissions as leverage; however, to date, Plaintiff has not received any a statement of earned but unpaid commissions nor any payment for the commissions that she is owed.

54.     Defendants failed to provide health insurance for Plaintiff pursuant to the agreement described in paragraphs 28 to 31 above.

55.     From the beginning of her employment until around November 2017, Plaintiff did not complain about Defendants' failure to provide health insurance because she feared that Cook would retaliate against her for doing so.

56.     However, in or around November 2017, Plaintiff began complaining to Cook about Defendants' failure to provide health insurance both because she discovered that other employees were receiving partial reimbursements for health insurance premiums and because she was involved in a car accident, which caused her to need increased medical treatment.

57.     In response to Plaintiff's complaints, she was reimbursed a total of $1,625.00 for health insurance premiums through her paychecks dated November 10, 2017 and November 17, 2017.

58.     Upon information and belief, the cost of a health insurance plan for Plaintiff was approximately $400.00 per month—i.e., a total of approximately $12,000.00 for the 30 months that she was employed by Defendants.

59.     From around November 2017 until after her last day of employment, Plaintiff has repeatedly requested that Defendants pay her for the health insurance that they failed to provide.

60.     In or around November 2017, in response to Plaintiff's repeated requests that Defendants pay for the health insurance that they failed to provide, Cook acknowledged the agreement to provide health insurance and said that he would honor it; however, he has since failed, neglected, and refused to do so.

61.     Around mid-2016, Plaintiff discovered that the number of hours shown on her pay stubs was sometimes less than the number of hours that she actually worked in the corresponding pay period.

62.     After discussing these discrepancies with other employees, in early 2017, Plaintiff began recording the hours that she worked each day in her calendar and, on some days, taking photos of the time clock.

63.     Upon information and belief, Defendants manually reduced the number of hours on some of Plaintiff's time cards and, therefore, the number of hours shown on Plaintiff's pay stubs and the number of hours for which Plaintiff was paid.

64.     For example, during the week of June 12, 2017, Plaintiff recorded in her calendar that she worked a total of 45 hours and 30 minutes, but her pay stub showed 44 hours and 15 minutes—a difference of 1 hour and 15 minutes.

65.     Plaintiff complained to Cook about the discrepancies between her time records and pay stubs multiple times.

66.     For example, in or around August 2017, Plaintiff complained to Cook about the discrepancies between her time records and pay stubs; Cook responded to Plaintiff's complaint by producing a printout of her time card for the week of June 12, 2017.

67.     The printout of Plaintiff's time card for the week of June 12, 2017 inexplicably included a plus sign next to two of the times but not next to any of the others; Plaintiff compared the printout of her time card to her time records and realized that each of the times without a plus sign had been manually reduced.

68.     Plaintiff never authorized any deductions from her hourly wages for any purpose and was never given any explanation for them.

69.     Upon information and belief, Defendants also made deductions from Plaintiff's commissions.

70.     For example, the amount of the check for commissions that Plaintiff received on or around June 9, 2017 was $546.75 less than the amount of commissions that Plaintiff actually earned on the projects covered thereby.

71.     Plaintiff never authorized any deductions from her commissions for any purpose and was never given any explanation for them.

## FIRST CAUSE OF ACTION
## Failure to Pay Overtime Wages Pursuant to the FLSA

72.     All preceding paragraphs are incorporated herein by reference.

73.     Plaintiff is an "employee" as defined in 29 U.S.C. § 203(e).

74.     Defendants are "employers" as defined in 29 U.S.C. § 203(d).

75.     Throughout her employment with Defendants, Plaintiff was "engaged in commerce or the production of goods for commerce" as defined in 29 U.S.C. §§ 203(b), 203(i) and used in 29 U.S.C. §§ 206(a), 207(a).

76.     Defendants are an "enterprise engaged in commerce or the production of goods for commerce" as defined in 29 U.S.C. §§ 203(b), 203(i), 203(s)(1) and used in 29 U.S.C. §§ 206(a), 207(a).

77.     Pursuant to 29 U.S.C. § 207(a)(1), Defendants were required to pay Plaintiff at least one-and-one-half times her regular rate for each hour of work in excess of 40 per week.

78.     Defendants failed to pay Plaintiff one-and-one-half times her regular rate for each hour of work in excess of 40 per week, as shown in the spreadsheet annexed hereto as Exhibit 2.

79.     Plaintiff's regular rate, based only on her hourly wages, was $33.65 per hour.

80.     Accordingly, Defendants were required to pay Plaintiff at least $50.48—i.e., one-and-one-half times $33.65—for each hour of work in excess of 40 per week.

81.     Insofar as Plaintiff was paid $33.65 for each hour of work, Defendants are liable for at least $16.83—i.e., one-half of $33.65—for each hour of work in excess of 40 per week.

82.     In fact, Plaintiff's regular rate is greater than $33.65—and therefore, Plaintiff's overtime rate is greater than $50.48—because, pursuant to 29 C.F.R. § 778.117, commissions must be included in the regular rate; however, because Plaintiff's commissions were paid sporadically, and many of them were not paid at all, without discovery, Plaintiff cannot determine what pay period, if any, is covered by each payment of commissions.

83.     Defendants' failure to pay Plaintiff one-and-one-half times her regular rate for each hour of work in excess of 40 per week, in violation of the FLSA, was "willful," as used in 29 U.S.C. § 255(a).

84.     Because of their failure to pay Plaintiff the required overtime wages, pursuant to 29 U.S.C. § 216(b), Defendants are liable to Plaintiff for the unpaid overtime wages, an equal amount in liquidated damages, attorney's fees, and costs.

<u>SECOND CAUSE OF ACTION</u>
<u>Failure to Pay Overtime Wages Pursuant to the NYLL</u>

85.     All preceding paragraphs are incorporated herein by reference.

86.     Plaintiff is an "employee" as defined in N.Y. Lab. Law § 651(5).

87.     Defendants are "employers" as defined in N.Y. Lab. Law § 651(6).

88.     Pursuant to N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2, Defendants were required to pay Plaintiff at least one-and-one-half times her regular rate for each hour of work in excess of 40 per week.

89.     Defendants failed to pay Plaintiff one-and-one-half times her regular rate for each hour of work in excess of 40 per week, as shown in the spreadsheet annexed hereto as Exhibit 2.

90.     Plaintiff's regular rate, based only on her hourly wages, was $33.65 per hour.

91.     Accordingly, Defendants were required to pay Plaintiff at least $50.48—i.e., one-and-one-half times $33.65—for each hour of work in excess of 40 per week.

92.     Insofar as Plaintiff was paid $33.65 for each hour of work, Defendants are liable for at least $16.83—i.e., one-half of $33.65—for each hour of work in excess of 40 per week.

93.     In fact, Plaintiff's regular rate is greater than $33.65—and therefore, Plaintiff's overtime rate is greater than $50.48—because, pursuant to 29 C.F.R. § 778.117, commissions must be included in the regular rate; however, because Plaintiff's commissions were paid sporadically, and many of them were not paid at all, without discovery, Plaintiff cannot determine what pay period, if any, is covered by each payment of commissions.

94.     Because of their failure to pay Plaintiff the required overtime wages, pursuant to N.Y. Lab. Law § 663(1), Defendants are liable to Plaintiff for the unpaid overtime wages, an equal amount in liquidated damages, prejudgment interest, and attorney's fees.

## THIRD CAUSE OF ACTION
### Failure to Pay Commissions Pursuant to the NYLL

95.     All preceding paragraphs are incorporated herein by reference.

96.     Plaintiff is an "employee" as defined in N.Y. Lab. Law § 190(2).

97.     Plaintiff is an "commission salesman" as defined in N.Y. Lab. Law § 190(6).

98.     Defendants are "employers" as defined in N.Y. Lab. Law § 190(3).

99.     The commissions that Plaintiff is owed are "wages" as defined in N.Y. Lab. Law § 190(1).

100.     Pursuant to N.Y. Lab. Law § 191(1)(c), Defendants were required to pay Plaintiff "wages, salary, drawing account, commissions and all other monies earned or payable in accordance with the agreed terms of employment . . . ."

101.     Pursuant to N.Y. Lab. Law § 191(1)(c):

> The agreed terms of employment shall be reduced to writing, signed by both the employer and the commission salesperson, kept on file by the employer for a period not less than three years and made available to the commissioner upon request. Such writing shall include a description of how wages, salary, drawing account, commissions and all other monies earned and payable shall be calculated. . . . Such writing shall also provide details pertinent to payment of wages, salary, drawing account, commissions and all other monies earned and payable in the case of termination of employment by either party. The failure of an employer to produce such written terms of employment, upon request of the commissioner, shall give rise to a presumption that the terms of employment that the commissioned salesperson has presented are the agreed terms of employment.

102.     Defendants failed to reduce the terms of Plaintiff's employment to a writing in accordance with N.Y. Lab. Law § 191(1)(c).

103.     Where Defendants failed to reduce the terms of Plaintiff's employment to a writing in accordance with N.Y. Lab. Law § 191(1)(c), Plaintiff submits that the terms of her

employment are governed by "[t]he general rule . . .  that a broker who produces a person ready and willing to enter into a contract upon his employer's terms . . . has earned his commissions." *Feinberg Bros. Agency, Inc. v. Berted Realty Co., Inc.,* 517 N.E.2d 1325, 1326 (N.Y. 1987).

104.    Where Defendants failed to specify when and how a sale must be closed for Plaintiff to earn commissions or explicitly foreclose the possibility of post-termination commissions, *Yudell v. Ann Israel & Associates, Inc.,* 669 N.Y.S.2d 580, 581 (N.Y. App. Div. 1998), Plaintiff submits that she is entitled to commissions on all sales that she originated during her employment, regardless of when they were closed and when the customers paid.

105.    Pursuant to N.Y. Lab. Law § 198(3), Plaintiff is entitled to recover all wages and liquidated damages accrued within six years before the commencement of this action.

106.    Because of their failure to pay Plaintiff the commissions that she earned, pursuant to N.Y. Lab. Law § 198(1-a), Defendants are liable to Plaintiff for the unpaid commissions, an equal amount in liquidated damages, prejudgment interest, and attorneys' fees.

### FOURTH CAUSE OF ACTION
### Failure to Provide Benefits Pursuant to the NYLL

107.    All preceding paragraphs are incorporated herein by reference.

108.    The health insurance that Defendants failed to provide pursuant to the agreement described in paragraphs 28 to 31 above is a "benefit or wage supplement" as defined in N.Y. Lab. Law § 198-c(2).

109.    "Benefits or wage supplements" are "wages" as defined in N.Y. Lab. Law § 190(1).

110.    Pursuant to N.Y. Lab. Law § 191(1)(c), Defendants were required to pay Plaintiff "wages, salary, drawing account, commissions and all other monies earned or payable in accordance with the agreed terms of employment . . . ."

111.    Pursuant to N.Y. Lab. Law § 198-c(1):

> In addition to any other penalty or punishment otherwise
> prescribed by law, any employer who is party to an agreement to
> pay or provide benefits or wage supplements to employees or to a
> third party or fund for the benefit of employees and who fails,
> neglects or refuses to pay the amount or amounts necessary to
> provide such benefits or furnish such supplements within thirty
> days after such payments are required to be made, shall be guilty
> of a misdemeanor, and upon conviction shall be punished as
> provided in section one hundred ninety-eight-a of this article.
> Where such employer is a corporation, the president, secretary,
> treasurer or officers exercising corresponding functions shall each
> be guilty of a misdemeanor.

112.    N.Y. Lab. Law § 198-c(1) also provides a private right of action for civil liability.

*Excavators Union Local 731 Welfare Fund v. Zurmuhlen,* 414 N.Y.S.2d 140, 142 (N.Y. App.

Div. 1979).

113.    Pursuant to N.Y. Lab. Law § 198(3), Plaintiff is entitled to recover all wages and

liquidated damages accrued within six years before the commencement of this action.

114.    Because of their failure, neglect, and refusal to provide Plaintiff health insurance,

pursuant to N.Y. Lab. Law § 198(1-a), Defendants are liable to Plaintiff for the value of the

health insurance, an equal amount in liquidated damages, prejudgment interest, and attorneys'

fees.

### FIFTH CAUSE OF ACTION
### Unlawful Deductions from Wages Pursuant to the NYLL

115.    All preceding paragraphs are incorporated herein by reference.

116.    The hourly wages and commissions that Defendants paid Plaintiff are "wages" as

defined in N.Y. Lab. Law § 190(1).

117.    Pursuant to N.Y. Lab. Law § 193(1), an employer may not make deductions from

wages, except as set forth therein.

118.   The deductions that Defendants made from Plaintiff's hourly wages and commissions were unlawful because they were not "made in accordance with the provisions of any law or any rule or regulation issued by any governmental agency, " N.Y. Lab. Law § 193(1)(a), "expressly authorized in writing by the employee and are for the benefit of the employee," N.Y. Lab. Law § 193(1)(b), "related to recovery of an overpayment of wages where such overpayment is due to a mathematical or other clerical error by the employer," N.Y. Lab. Law § 193(1)(a), "expressly authorized in writing by the employee and are for the benefit of the employee," N.Y. Lab. Law § 193(1)(c), or "repayment of advances of salary or wages made by the employer to the employee," N.Y. Lab. Law § 193(1)(d).

119.   Because the deductions from Plaintiff's hourly wages and commissions were made surreptitiously, without discovery, Plaintiff cannot determine the total amount of the deductions.

120.   Because Defendants made unlawful deductions from Plaintiff's wages, pursuant to N.Y. Lab. Law § 198(1-a), Defendants are liable to Plaintiff for the unlawfully deducted wages, an equal amount in liquidated damages, attorney's fees, and costs.

### SIXTH CAUSE OF ACTION
### Failure to Provide Wage Notice Pursuant to the NYLL

121.   All preceding paragraphs are incorporated herein by reference.

122.   Pursuant to N.Y. Lab. Law § 195(1), Defendants were required to provide Plaintiff, at the time of hiring, a notice containing the rate or rates of pay and basis thereof, the regular pay day designated by the employer, the name of the employer, any "doing business as" names used by the employer, the physical address of the employer's main office or principal place of business, and a mailing address if different, and  the telephone number of the employer.

123.   Defendants failed to provide the required wage notice.

124.    Because of their failure to provide the required wage notice, pursuant to N.Y. Lab. Law § 198(1-b), Defendants are liable to Plaintiff for damages of $50.00 for each work day that the violations occurred or continue to occur up to a maximum of $5,000.00.  In this case, because Defendants failed to provide the required wage notice for more than 100 work days, they are liable to Plaintiff for damages of $5,000.00.

**SEVENTH CAUSE OF ACTION**
**Failure to Provide Wage Statements Pursuant to the NYLL**

125.    All preceding paragraphs are incorporated herein by reference.

126.    Pursuant to N.Y. Lab. Law § 195(3), Defendants were required to provide Plaintiff with a statement with each payment of wages listing the dates of work covered by that payment of wages, name of employee, name of employer, address and phone number of employer, rate or rates of pay and basis thereof, gross wages, deductions, net wages, regular hourly rate or rates of pay, overtime rate or rates of pay, number of regular hours worked, and number of overtime hours worked.

127.    Defendants failed to provide the required wage statements.

128.    The pay stubs that Defendants provided to Plaintiff with each payment of hourly wages did not list the overtime rate or rates of pay or the number of overtime hours worked.

129.    The pay stubs that Defendants provided to Plaintiff with each payment of commissions did not list the dates of work covered by that payment of wages or the rate or rates of pay and basis thereof.

130.    Because of their failure to provide the required wage notice, pursuant to N.Y. Lab. Law § 198(1-d) Defendants are liable to Plaintiff for damages $250.00 for each work day that the violations occurred or continue to occur up to a maximum of $5,000.00.  In this case,

because Defendants failed to provide the required wage statements for more than 20 work days, they are liable to Plaintiff for damages of $5,000.00.

## EIGHTH CAUSE OF ACTION
### Breach of Contract Pursuant to New York Common Law

131.    All preceding paragraphs are incorporated herein by reference.

132.    The agreement described in paragraphs 28 to 31 above constituted a contract.

133.    Pursuant to the contract, Defendants were obligated to pay Plaintiff 5% commission on the net profit for all sales and provide health insurance for Plaintiff.

134.    Plaintiff performed the contract by working for Defendants.

135.    Defendants breached the contract by failing to pay Plaintiff 5% commission on the net profits for all sales and provide health insurance for Plaintiff.

136.    Because Defendants breached the contract, Plaintiff has been damaged in the amount of the unpaid commissions and the value of the health insurance.

## NINTH CAUSE OF ACTION
### Promissory Estoppel Pursuant to New York Common Law

137.    All preceding paragraphs are incorporated herein by reference.

138.    Defendants promised to pay Plaintiff 5% commission on the net profit for all sales and provide health insurance for Plaintiff.

139.    Plaintiff reasonably relied on the promises described in paragraph 138 above by working for Defendants.

140.    Because Plaintiff reasonably relied on the promises described in paragraph 138 above, Plaintiff has been damaged in the amount of the unpaid commissions and the value of the health insurance.

## TENTH CAUSE OF ACTION
## Quantum Meruit Pursuant to New York Common Law

141.    All preceding paragraphs are incorporated herein by reference.

142.    Plaintiff rendered services to Defendants in good faith.

143.    Defendants accepted the services that Plaintiff rendered.

144.    Plaintiff expected compensation—i.e., 5% commission on the net profit for all sales and health insurance—for the services that she rendered.

145.    Plaintiff is entitled to recover the reasonable value of the services that she rendered—i.e., the amount of the unpaid commissions and the value of the health insurance.

## ELEVENTH CAUSE OF ACTION
## Unjust Enrichment Pursuant to New York Common Law

146.    All preceding paragraphs are incorporated herein by reference.

147.    Defendants were enriched at Plaintiff's expense insofar as the work that Plaintiff performed generated revenue for Defendants.

148.    It is against equity and good conscience to permit Defendants to retain the benefits of the work that Plaintiff did without adequately compensating Plaintiff.

149.    Defendants have been unjustly enriched, and Plaintiff has been damaged, in the amount of the unpaid commissions and the value of the health insurance.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment against Defendants as follows:

A.    Awarding Plaintiff damages, in an amount to be determined at trial, for unpaid overtime wages pursuant to the FLSA and/or NYLL;

B.    Awarding Plaintiff liquidated damages in an amount equal to the amount of unpaid overtime wages pursuant to the FLSA and/or NYLL;

C.    Awarding Plaintiff damages, in an amount to be determined at trial, for unpaid commissions pursuant to the NYLL and/or New York common law;

D.    Awarding Plaintiff damages, in an amount to be determined at trial, for the value of the health insurance that Defendants failed to provide pursuant to the NYLL and/or New York common law;

E.    Awarding Plaintiff damages, in an amount to be determined at trial, for unlawful deductions from wages pursuant to the NYLL;

F.    Awarding Plaintiff liquidated damages in an amount equal to the amount of unpaid commissions, the value of the health insurance that Defendants failed to provide, and the unlawful deductions from wages pursuant to the NYLL;

G.    Awarding Plaintiff damages of 5,000.00 for Defendants' failure to provide a wage notice pursuant to the NYLL;

H.    Awarding Plaintiff damages of $5,000.00 for Defendants' failure to provide wage statements pursuant to the NYLL;

I.    Awarding Plaintiff attorney's fees and costs pursuant to the FLSA, NYLL, 28 U.S.C. § 1920, and/or Fed. R. Civ. P. 54(d);

J.    Awarding Plaintiff prejudgment interest pursuant to N.Y. CPLR 5004 and N.Y.

Lab. Law §§ 198(1-a), 663(1);

K.    Awarding Plaintiff postjudgment interest pursuant to 28 U.S.C. § 1961; and

L.    Granting such other relief as this Court deems just.

Dated: New York, New York
          April 10, 2019

KORDER LAW

By:    _____

Jacob Korder (JK6283)
Attorney for Plaintiff
470 Park Avenue South
3rd Floor North
New York, NY 10016
(646) 762-7265
jkorder@korderlaw.com